## JULIUS CUSHMAN *vs.* WASHINGTON LIBBEY.

The amount of a check, drawn by a third party on a bank in which the drawer has a deposit to meet it from the time of drawing to the time of payment, and which has been paid by a debtor and received by his creditor as money in the ordinary course of business, cannot be recovered by the assignee of the debtor under *St.* 1841, c. 124, § 3, although paid with intent to give a preference.

ACTION OF CONTRACT, with a count in tort, brought under *St.* 1841, *c.* 124, § 3, by the assignee of Atherton & Walker, insolvent debtors, under proceedings in insolvency commenced on the 6th of September 1858, to recover the value of a check as having been transferred by Atherton & Walker to the defendant in fraud of the insolvent laws.

At the trial in the superior court of Suffolk at January term 1859, the plaintiff introduced evidence tending to show that Atherton & Walker had in 1852 borrowed $1,100 from the

defendant, and given their promissory note therefor, on which interest had been paid up to February 1856, and payment of the principal of which had been repeatedly demanded by the defendant; that on the 14th of June 1856 Atherton & Walker, being insolvent in fact and as they and the defendant had reasonable cause to believe, and intending to give a preference, in order to raise money to pay their note, gave to Sand, Craft & Co. their note on six months, secured by a mortgage of their entire stock in trade, and Sand, Craft & Co. gave them their check of the same date for $1,200 on the Traders' Bank payable to bearer, and Atherton & Walker immediately gave it to the defendant in payment of their note to him, on which $1,125 were then due, and received from him $75 in money; that the 14th being Saturday, the check was presented and paid on the next Monday at the bank, where Sands, Craft & Co. had a deposit larger than the amount of the check, both at the date of the check and the time of its payment; and that the check was paid, taken and treated by the several parties as and for money, in the ordinary course of business.

*Nash*, J. instructed the jury that if " the respective parties considered and treated the loan of the check and the payment of the note thereby as a money transaction, and the check as money, such as loans and payments are ordinarily understood and accomplished among merchants and business men, then the plaintiff was not entitled to maintain this action, notwithstanding Atherton & Walker, at the time of such payment of the note by the check, wēre insolvent, and had not reasonable cause to believe themselves solvent, and intended to give a preference to the defendant, a pre-existing creditor, and the defendant at the same time had reasonable cause to believe them insolvent." A verdict was taken for the defendant, and the plaintiff alleged exceptions to this instruction, and to rulings previously made but not now material to be stated.

*B. F. Brooks & J. D. Ball*, for the plaintiff. The check was the check of third parties, and was no more money than their promissory note or bill of exchange would have been, but a mere chose in action. *Moore* v. *Barthrup*, 2 D. & R. 25. *Sims*

v. *Bond,* 2. Nev. & Man. 616. *Taylor* v. *Wilson,* 11 Met. 51. *Bullard* v. *Randall,* 1 Gray, 605. *Kelly* v. *Brown,* 5 Gray, 108. *Lane* v. *Felt,* 7 Gray, 491. *Mohawk Bank* v. *Broderick,* 10 Wend. 306. *Commercial Bank* v. *Hughes,* 17 Wend. 100. Story on Notes, §§ 497, 498. 3 Kent Com. (6th ed.) 75. The check did not, upon delivery to the defendant, transfer to him, either by way of legal or equitable assignment, $1,120 of the moneys of Sand, Craft & Co. in the bank, especially as they had more than that amount in the bank at the time. *Bullard* v. *Randall, ubi supra. Dykens* v. *Leather Manufacturers' Bank,* 11 Paige, 612, 617. The case of *Wall* v. *Lakin,* 13 Met. 167, related to a payment of money, and, as applied to a check, is at variance with *Ex parte Simpson,* De Gex, 9. The parties could not make the check money merely by calling and treating it as money. If they could, the *St.* of 1841, *c.* 124, § 3, would be a dead letter; for all that would be necessary to evade its provisions would be for the debtor and creditor to treat the debtor's promissory note or his stock of goods as money, and the creditor to receive it as such in payment of his debt, and the preference would be secure.

*J. G. Abbott & D. E. Ware,* for the defendant, cited *Wall* v. *Lakin,* 13 Met. 167; *Taylor* v. *Wilson,* 11 Met. 44; *Phillips* v. *Blake,* 1 Met. 158, 159; *Snow* v. *Perry,* 9 Pick. 542; *Barnard* v. *Graves,* 16 Pick. 41; *Cornwall* v. *Gould,* 4 Pick. 447; *Wright* v. *Reed,* 1 T. R. 554; *People* v. *Baker,* 2 Wend. 602.

HOAR, J. The various exceptions taken by the plaintiff in the course of the trial become immaterial, if the final ruling upon which he submitted to a verdict was correct.

It was decided in *Wall* v. *Lakin,* 13 Met. 167, that the provisions of the *St.* 1841, *c.* 124, § 3, did not apply to the case of the payment of a debt in money; and that such a payment could not be set aside by the assignees of an insolvent debtor, nor the money paid be recovered back for distribution among his creditors, although the payment was made under circumstances which would have made " any assignment, sale, transfer or conveyance, either absolute or conditional, of any part of his estate " void and invalid as against the assignees. As this case

arises under and must be governed by the *St.* of 1841, the only question which we have to determine is, whether a payment by means of a check upon a bank, received by the debtors as money, and taken, treated and received in payment by the defendant as money, in the ordinary course of business, and according to the common commercial practice and usage, is to be regarded as a payment in money, in the application of the doctrine settled by *Wall* v. *Lakin.* And we are all of opinion that it ought to be so regarded.

It is true that a check drawn upon a deposit in a bank is not in itself money. It is an order for the payment of money, and somewhat resembles a bill of exchange. But so bank bills are not money. They are promissory notes, payable to the bearer; a peculiar kind of promissory notes, intended for circulation as money, usually treated as money, and discharging many of the offices of money, but deriving all their title to be called or regarded as money merely from the consent of those who use them. Among merchants it is almost as common to pay obligations by means of bank checks, especially in large transactions, as by means of bank notes. In our cities, a very common, if not the most common, mode of payment is for the debtor to draw a check, which the creditor receives and deposits in the bank where he keeps his account; and the bank receives the deposit as if it were money, and collects it of the bank upon which the check is drawn, as it would the bills of that bank if they had been deposited instead. By commercial usage, a check thus drawn in payment of a pecuniary obligation is not regarded as a negotiable instrument assigned to the party who takes it, depending upon the general credit or solvency of the drawer; but as importing that the money is on deposit in the bank, ready to be paid on the presentment of the check, so that it is substantially equivalent to the present possession of the money itself, while it may be more convenient to both parties than the actual manual delivery of bank bills or cash. So in some parts of the country ingots of gold, bearing the stamp of the government assay, or, for small transactions, post-office stamps and treasury notes, are treated and used as a currency.

The reason of the exception of a payment in money of a debt from the operation of the statute of 1841 has nothing to do with the kind of currency in which the debt is paid. It would not extend to a payment in merchandise, or securities, in which there must be an appraisal of the value of the thing given in payment, and so a new contract made for the sale or transfer of property of the debtor. But it was intended to allow, as lawful, payments made in the ordinary course of business, and made in a manner intended and understood by the parties as payments in money, that is, payments according to the terms of the contract, in the usual manner in which such payments are made. If the drawer of the check had no funds in the bank, and the real nature and purpose of the transaction were to substitute for the original liability a new liability of the debtor or of a third person, the result might be different. But a check upon an actual deposit in a bank, where the money is at the command of the creditor from the time the check is delivered, and is actually received by him as soon as it suits his convenience, paid and received as money by the parties according to the ordinary course of business, is, in our judgment, equivalent to a payment in money, in its relation to the provision of the statute now before us.　　*Exceptions overruled.*